UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

PANSYE WILLIAMS,

        Plaintiff,

v.                                    CIVIL ACTION NO. 2:09-CV-953

PNC BANK and
FIRST FRANKLIN
FINANCIAL CORPORATION and
HOME LOAN SERVICES, d/b/a
FIRST FRANKLIN LOAN SERVICES, and
SELECT PORTFOLIO SERVICING, INC. and
AMERICAN HOME MORTGAGE SERVICING, INC. and
U.S. BANK NATIONAL ASSOCIATION and
CITIGROUP GLOBAL MARKETS REALTY CORP.,

        Defendants.


MEMORANDUM OPINION AND ORDER


        Pending is a motion by defendants PNC Financial

Services Group, Inc. and American Home Mortgage Servicing, Inc.,

to transfer venue, filed August 27, 2009.[1]


I.


        The following statement of facts in part I is based on

the allegations of the complaint.

_____

        [1] Inasmuch as PNC Financial Services Group is no longer a
party to this action, the court treats this motion as filed by
defendant American Home Mortgage Servicing, Inc.

Plaintiff Pansye Williams is a 67-year-old home health care worker who resides in Berkeley County, West Virginia. (Sec. Am. Compl. at ¶ 2). Defendant American Home Mortgage Servicing, Inc. ("American Home Mortgage") serviced one of the two loans relevant to this action from July 1, 2008, through the present. American Home Mortgage's principal place of business is in California. (Id. ¶ 12). None of the remaining defendants have principal places of business in West Virginia.

In June 2006, plaintiff sought to purchase a house in Martinsburg, West Virginia ("the property"). (Id. ¶ 15). Plaintiff was referred to National City Mortgage, now a division of broker defendant PNC Bank, to finance the purchase of the property, and National City Mortgage approved her for a 30-year fixed rate financing of at least $350,000.[2] (Id. ¶¶ 3, 16-17). At the time, plaintiff's total monthly income was about $2,880. (Id. ¶ 18). National City Mortgage overstated plaintiff's monthly income in her loan applications and provided plaintiff with two "balloon" loans, requiring monthly payments followed by

---

[2] Plaintiff separates the defendants into four categories: broker defendant (PNC Bank); lender defendant (First Franklin Financial Corporation); servicer defendants (Home Loan Services, Select Portfolio Servicing, Inc., and American Home Mortgage); and holder defendants (U.S. Bank National Association and Citigroup Global Markets Realty Corp.).

2

a large payment due upon maturity, instead of the fixed rate financing she was promised.  (<u>Id.</u> ¶ 22).  Plaintiff's initial mortgage payments on the two loans combined were just over $2,214 per month.  (<u>Id.</u> ¶ 23).

Plaintiff failed to keep current on the monthly payments of her two loans.  The servicing rights on the loans transferred between defendants, and the holder and servicer defendants continually sought to foreclose on the property.  (<u>Id.</u> ¶¶ 28, 30-33, 37, 39, 41).  Plaintiff attempted to keep current on her loans and requested loan modifications.  (<u>Id.</u> ¶¶ 29, 35, 40).  The servicer defendants, however, engaged in abusive loan servicing tactics, including assessing illegal late fees, refusing payments, and misrepresenting details of plaintiff's loans.  (<u>Id.</u> ¶¶ 26, 33-34, 42).

II.

Plaintiff instituted this action against the above-named defendants on July 16, 2009, in the Circuit Court of Kanawha County, West Virginia.  (Mot. Transfer Venue at ¶ 1).  Plaintiff alleges six counts: (1) unconscionable contract, (2) breach of fiduciary duty, (3) illegal debt collection, (4) illegal return of payments, (5) breach of covenant of good faith

3

and fair dealing, and (6) joint venture, conspiracy, and agency. (Id. ¶¶ 46, 51, 56, 58, 60, 64).

Defendants removed on August 20, 2009, on the grounds of diversity. (Mot. Transfer Venue at ¶ 5). On August 27, 2009, American Home Mortgage moved to transfer venue, asserting that, inasmuch as a substantial part of the events that led to this action took place in the Northern District of West Virginia, transfer is proper. (Mot. Transfer Venue at ¶¶ 12-14). Plaintiff responded on September 24, 2009, opposing transfer of venue. No other parties have responded.

In support of transfer, American Home Mortgage states as follows in paragraph numbers 9 and 12 of its motion:

> 9. The Plaintiff is a resident of Martinsburg, Berkeley County, West Virginia. (Compl. ¶ 2.) The property that is the subject of this action is situated in Berkeley County, West Virginia. (Compl. ¶ 14.) In addition, a substantial part of the events giving rise to the claim <u>presumably</u> occurred in Berkeley County, West Virginia.
>
> 12. The heart of this Civil Action is in Berkeley County, West Virginia. The property itself is located in Berkeley County, West Virginia. The loans underlying Plaintiff's actions were <u>presumably</u> entered into by Plaintiff in Berkeley County, West Virginia. Plaintiff and <u>presumably</u> other witnesses offered by Plaintiff will be residents of Berkeley County, West Virginia, or surrounding counties. In fact, there will likely be no witnesses who are residents of Kanawha County, West Virginia, or surrounding counties. This Civil Action has no ties to Kanawha County or the counties comprising the Southern District of West Virginia.

(Mot. Transfer Venue 3-4) (emphasis added).

Plaintiff responds that she is represented by counsel located in Charleston, in Kanawha County; that she was unable to retain counsel near Martinsburg in Berkeley County; and that she initially instituted her action in Kanawha County to minimize legal fees and costs. (Resp. at 2-3). Plaintiff further responds that American Home Mortgage's counsel are also located in Charleston. (Id.). Plaintiff additionally notes that moving this action to the Northern District would "drastically increas[e] legal fees and costs." (Id.). The court notes that all defendants other than American Home Mortgage are represented by the same counsel whose firm is located in Pittsburgh, Pennsylvania, a point that is nearly equidistant from each Charleston in the Southern District and Martinsburg in the Northern District, both being points for holding federal district court.

III.

Pursuant to 28 U.S.C § 1404(a), a district court may, "for the convenience of parties and witnesses, in the interest of justice," transfer a case to any other district or division where

5

the action might have been brought.  Id.  A district court must first determine whether the district to which a movant is attempting to transfer the action is an appropriate venue. Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).  Title 28 U.S.C. § 1391(a)(2) provides pertinently as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may . . . be brought only in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .

28 U.S.C. § 1391(a)(2).[3]  In sorting out the effects of events or omissions in the course of determining venue under section 1391(a)(2), a court "should review 'the entire sequence of events underlying the claim'" rather than focusing only upon the matters that led to the action.  Id. (quoting Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001)).

If plaintiff could have initially brought her claim in the Northern District, the court may transfer the action there.

---

[3] Inasmuch as this action was removed from the Circuit Court of Kanawha County, venue is proper in this district.  Section 1441(a), and not the ordinary federal venue statute, 28 U.S.C. § 1391, governs venue in removed cases. See Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 665-66 (1953) (stating that "even on the question of venue, § 1391 has no application to this case because this is a removed action. . . . Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'").

28 U.S.C. § 1404(a). That transfer decision is guided by the consideration of a number of "case-specific factors." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Important factors to be considered include

> (1) ease of access to sources of proof; (2) the convenience of parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the possibility of a view; (6) the interest in having local controversies decided at home; and (7) the interests of justice.

AFA Enters., Inc. v. American States Ins. Co., 842 F. Supp. 902, 909 (S.D. W. Va. 1994) (adopting factors set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947)).[4] Of these factors, the second and seventh are primary.

Additionally, a plaintiff's forum selection is accorded substantial weight. Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984). Indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp., 330 U.S. at 508. Finally, "The movant . . . bears the burden of showing the propriety of the transfer." AFA, 842 F. Supp. at 909.

---

[4] A further factor is that of jury duty though it is now of negligible consequence inasmuch as less than 2% of civil cases go to jury trial in this district.

IV.

A number of the events underlying this action occurred in Berkeley County, where plaintiff resides.  Plaintiff applied for her mortgage from there and received the twin mortgage loans to finance the purchase of the property that presumably were closed there.  Additionally, defendants are pursuing foreclosure in Berkeley County.  It seems evident that the Northern District is an appropriate venue under 28 U.S.C. § 1391(a)(2).

Moving to the propriety of transfer, the AFA factors most in play are the first, second, third, fourth, and seventh. Regarding the first factor, it would appear that the parties may have better access to some of the proof sources in Berkeley County in that many of the events underlying this case took place in Berkeley County at the outset.  Access to proof sources outside of Berkeley County does not weigh in favor of or against transfer inasmuch as the defendants are all headquartered out of state, in New York, California, Utah, Pennsylvania, and Ohio. Thus ease of access of proof weighs slightly in favor of the Northern District.

Regarding the second factor, the convenience of parties and witnesses tips in favor of retaining the case in the Southern

8

District.  The defendants' principal places of business are all located outside of West Virginia, and out-of-state representatives will have to travel to West Virginia regardless of the venue chosen.  Indeed, only one of the parties to this case seeks transfer.  Other than the plaintiff, no witnesses have been named by the movant, indicating that they, too, may be out of state.  While it appears that it may be more convenient for plaintiff, a resident of Berkeley County, to pursue this action in the Northern District as opposed to the Southern, the plaintiff has chosen this district as her preferred venue, indicating her belief that, all things considered, it is more convenient for her.

Regarding the third factor, the cost of obtaining the attendance of witnesses is, at this juncture, neutral.  Plaintiff is the only known witness at this time.  For out-of-state witnesses, the Northern and Southern Districts are likely equally convenient and will require similar travel costs.

Regarding the fourth factor, and reading the federal and West Virginia versions of Rule 45(b)(2) in pari materia, non-party subpoenas may be served at any place within this state.[5]

---

[5] Federal Rule of Civil Procedure 45(b)(2)(C) provides that
(continued...)

9

This factor does not weigh in favor of transfer.

Regarding the seventh factor, the interests of justice appear to weigh significantly in favor of denying transfer. Plaintiff chose the Southern District to minimize legal fees and costs.  (Pl.'s Resp. at 3).  Plaintiff contends that a transfer would increase legal fees and costs by virtue of her counsel having to travel.  It is true that the convenience of parties' counsel is generally accorded little or no weight in the transfer analysis.  See In re Volkswagon AG, 371 F.3d 201, 206 (5th Cir. 2004); In re Ralston Purina Company, 726 F.2d 1002, 1005 (4th Cir. 1984) ("The claim of the plaintiff that their attorneys are from Charlotte, we think is not a permissible consideration.").[6]

---

[5](...continued)
"a subpoena may be served at any place . . . within the state of the issuing court if a state statute or court rule allows service at that place of a subpoena issued by a state court of general jurisdiction sitting in the place specified for the deposition, hearing, trial, production, or inspection . . . ."  Fed. R. Civ. P. 45(b)(2)(C).  West Virginia Rule of Civil Procedure 45(b)(2) provides that "A subpoena may be served at any place within the State."  W. Va. R. Civ. P. 45(b)(2).  A further limitation, however, provides that "A deponent may be required to attend an examination only in the county in which the deponent resides or is employed or transacts business in person, or at such other convenient place as is fixed by an order of court."  W. Va. R. Civ. P. 45(c).

[6] It is important to note that Ralston Purina involved only an allegation concerning the location of plaintiffs' counsel.  It did not, as here, involve the further consideration that a
(continued...)

10

The unique cost considerations presented here, however, in light of the financial challenges already confronting plaintiff related to a potential foreclosure, carry considerable weight.

Based upon the significant weight of the seventh factor and plaintiff's choice of forum, and the rather evenly balanced weight of the other factors combined, American Home Mortgage has not met its burden of proving the propriety of the transfer. It is, accordingly, ORDERED that the motion to transfer venue be, and it hereby is, denied.

If plaintiff's deposition is sought by any party, it may on the initial occasion be taken in Charleston, with plaintiff bearing her own travel costs, unless defendants wish it to be taken in Martinsburg.

The Clerk is requested to transmit this written opinion and order to all counsel of record and to any unrepresented parties.

DATED: January 29, 2010

John T. Copenhaver, Jr.
United States District Judge

---

[6](...continued)
transfer from the venue where plaintiff's counsel was located would involve significant further expense to plaintiff. The court thus deems it proper to factor this consideration into the analysis in considering the interests of justice.

11